ORIGINAL

ECF

FILED
AUG 2 2 2003
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

INDUSTRIAL CONSTRUCTION, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 03-1984C

**COMPLAINT**

I.
JURISDICTION

1. This Court has jurisdiction over the subject matter of this action and the parties pursuant to 28 U.S.C. § 1491, *et seq.*, and 41 U.S.C. § 601, *et seq.*

II.
PARTIES

2. The Plaintiff, Industrial Construction, Inc. ("ICI") is an Idaho corporation, principally located in Idaho Falls, Idaho.

3. The Defendant, The United States of America acted at all time material hereto by and through officials representing the National Aeronautics and Space Administration ("NASA").

## III.
## FACTS

4. Prior hereto, Plaintiff and Defendant entered into a construction contract relating to a project located at John C. Stennis Space Center at Stennis, Mississippi. The construction project was known as E-Complex High Pressure Air System and E-3 Mechanical Upgrades (the "Project"), which were separate bid items each with separate and fixed completion dates. Both work scopes were let under Contract Number NAS13 02034 (the "Contract"). The Contract incorporated by reference a number of Federal Acquisition Regulations, including FAR 52.243-4.

5. Prior hereto, and pursuant to the parties' Contract, Plaintiff submitted a number of claims seeking additional compensation and additional contract performance time with respect to the Project. The Government reviewed and considered each of Plaintiff's claims on the merits, and denied Plaintiff's claims. Additionally, the Government when confronted with changes to the contract work, withdrew portions of the Plaintiff's work in order to allow another contractor the opportunity to perform the work.

6. Attached hereto as Exhibit "A" is a true and correct copy of the Contracting Officer's Decision dated August 30, 2002, denying Plaintiff's claim 2022-1-F30. Attached hereto as Exhibit "B" is a true and correct copy of the Contracting Officer's Decision dated September 6, 2002, denying Plaintiff's claim 2022-1-F39. Attached hereto as Exhibit "C" is a true and correct copy of the Contracting Officer's Decision dated September 6, 2002, denying Plaintiff's claim 2022-1-F45. Attached hereto as



ORIGINAL

Exhibit "D" is a true and correct copy of the Contracting Officer's Decision dated September 6, 2002, denying Plaintiff's claim 2022-1-F48. Attached hereto as Exhibit "E" is a true and correct copy of the Contracting Officer's Decision dated December 2, 2002, denying Plaintiff's claim 2022-1-21. Attached hereto as Exhibit "F" is a true and correct copy of the Contracting Officer's Decision dated December 20, 2002, denying Plaintiff's claim 2022-1-23. By this Complaint, Plaintiff appeals each of the Contracting Officer's Decisions denying Plaintiff's claims.

7. By its claims, Plaintiff sought an increase in the Contract amount in the aggregate amount of $360,839.00, as well as a Contract time extension request of 57 days.

8. All prerequisite jurisdictional matters with respect to the filing of this Complaint and with respect to the claims asserted by this Complaint have been met.

## COUNT ONE
## DAMAGES

9. Plaintiff realleges and incorporates by reference the allegations set forth paragraphs 1 through 8, above and further alleges as follows:

10. Pursuant to the parties' Contract, Plaintiff is entitled to the fair and reasonable costs, which it incurred as a result of *inter alia* constructive changes, defective plans and specifications, and delays caused by the Government, in an amount not less than $360,839.00, together with an appropriate Contract time extension of 57 days.

COUNT TWO
DECLARATORY RELIEF

11. Plaintiff realleges and incorporates by reference the allegations set forth paragraphs 1 through 10, above and further alleges as follows:

12. Plaintiff is entitled to Declaratory Relief, declaring the rights and obligations of the parties with respect to the Plaintiff's claims and the parties' Contract. Plaintiff seeks a declaration with respect to the Government's right to remove portions of the work rather than agree to changes, and Plaintiff's additional compensation and additional Contract time owed. Such relief should include all costs reasonably incurred for which compensation has not yet been received along with interest, together with an appropriate declaration of the additional time to which Plaintiff would otherwise be entitled.

WHEREFORE, Plaintiff Industrial Construction, Inc., requests this Court:

a. Enter an award in favor of Plaintiff for its costs incurred in connection with the claims referenced herein and attached hereto in an amount of not less than $360,839.00, together with interest, costs and a Contract extension of 57 days.

b. Declare the rights and obligations to the parties with respect to their Contract, and the governments responsibility for additional costs and Contract time.

c. For such other and further relief as the Court may deem just and proper.

Dated this 21st day of August, 2003.

Frederick J. Hahn, III
Holden, Kidwell, Hahn & Crapo, P.L.L.C.
330 Shoup Avenue, 3rd Floor
PO Box 50130
Idaho Falls, Idaho 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

G:\WPDATA\FJ\8662\30 NASA\Pldgs\COMPLAINT.wpd:bel

National Aeronautics and
Space Administration
John C. Stennis Space Center
Stennis Space Center, MS 39529-6000

NASA

Aug 30, 2002

Reply to Attn of: DA10

Mr. Jon L. Johnson
Industrial Construction Inc.
P.O. Box 51920
Idaho Falls, ID 83405-1920

RECEIVED
SEP 0 3 2002
INDUSTRIAL CONSTRUCTION INC.

Subject: Contract NAS13 02034, Contracting Officer's Final Decision regarding Industrial Construction Inc., Claim 2022-1-F30, dated July 1, 2002

Dear Mr. Johnson:

The above referenced claim was received in our office on July 1, 2002. This claim requested compensation in the amount of $44,587.00 as it related to Field Change Requests (FCRs) 031A, 033, 035, 036, 037, 038, 040 and 042. ICI asserted that the work associated with the referenced FCRs constitute "changes pursuant to FAR 52.243-4", and are compensable.

Pursuant to FAR 33.211, the Contracting Officer's Final Decision is as follows:

The "Changes Clause" provides the Contracting Officer the authority to make changes within the general scope of the contract being administered. Once a change is identified by the Government, the contractor is notified of that change, and is provided the authorization to perform the work. The contractor then has an opportunity to seek an adjustment to the contract price, delivery or completion schedule. It does not authorize contractors to unilaterally perform work or effectuate changes to the contract without the prior express approval of the Contracting Officer.

**FCR 031A:** This FCR was originally issued by Stennis Space Center (SSC) on April 26, 2002 as FCR 031. The purpose of this FCR was to offset pipe support 27 and pipe support 28 to allow room for the auger to clear existing cable tray and pipe support. The FCR's recommended change was to offset pipe support 27 and 28 2'-0" North from the currently specified location. On May 3, 2002 FCR 031 was canceled and replaced with FCR 031A.

On May 16, 2002, ICI submitted a proposed cost of $21,701.00 for the additional work associated with FCR 031A. NASA began to review ICI's proposed costs and also requested funding, which would allow negotiations to begin. On May 29, 2002 the Contracting Officer's Technical Representative (COTR) informed the Contracting Officer that ICI had already begun work on FCRs 031A, 035, 036, 037, 038, 040 and 042. The Contract Administrator contacted



EXHIBIT A
PAGE 1 OF 6

you, the president of ICI, on May 29, 2002, and you confirmed that ICI had, in fact, begun working on these FCRs. The Contract Administrator and the Contracting Officer then explained to you that an FCR does not authorize additional work, and that only a Contracting Officer could authorize additional work. This was the same information that was conveyed in the Pre-construction conference held on March 20, 2002 and documented by NASA's checklist signed by ICI's representative.

In that conversation on May 29, 2002, you also asked about the work associated with FCR 031A, which had not been completed (i.e. the pipe supports). ICI's original proposed costs for FCR 031A encompassing all work (completed and uncompleted) was $21,701.00. NASA subsequently decided that the remaining portion of FCR 031A, <u>which had not been completed,</u> should be formally modified into the contract. In furtherance of that goal, ICI submitted a revised FCR 031A in the amount of $10,562.00 on June 4, 2002. NASA evaluated the proposed revision and held negotiations with ICI on June 14, 2002. Through negotiations, both ICI and NASA agreed on a price of $9,200.00. Presented with Modification 4, incorporating the work and agreed upon price, ICI refused to sign the document because ICI wanted a disclaimer for additional days associated with the FCRs of Modification 4. However, a review of your submitted FCR confirmed "no schedule impact", therefore additional days were not warranted. Subsequently, a unilateral Modification 4 was issued by the Government on June 19, 2002 authorizing the remaining work of FCR 031A in the amount of $9,200.00.

On July 1, 2002, ICI submitted this claim for $12,500.00 for the remaining unauthorized work accomplished under FCR 031A that was not covered by Modification 4. As stated above, ICI originally proposed $21,701.00 (e.g. $10,562.00 for uncompleted work and $11,139.00 for completed work) for all work associated with FCR 031A.

After reviewing ICI's claim for additional compensation, NASA has concluded that ICI should be compensated for this unauthorized work because NASA received a benefit, the work needed to be done, and would have been accomplished had proper procedures been followed, and funds were available at the time of the unauthorized work. NASA however, disagrees with ICI's proposed cost for that work. ICI's proposed labor hours, equipment costs, and miscellaneous costs are unsupportable. The scope of the work includes three additional welds on 4" SCH 10 pipe and three additional welds on 2-1/2" SCH 10 pipe, according to contractor. The NASA estimate comes to a total of ninety-two pipe fitter hours. Under equipment expenses, ICI submitted costs for a boom truck, welding machine, and 35' JLG. That equipment was already on site during the entire time of construction, therefore no additional costs are warranted. Under miscellaneous expenses, ICI submitted costs associated with the X-ray of ten welds. However, pursuant to contract specification 110GM-GM02, only 10% of welds for this class pipe are subject to X-ray, therefore only two welds were required to be X-rayed. Using ICI's adder rate identified in the FCR, NASA is willing to approve a cost of $6,105.00 for the previously unauthorized work accomplished under FCR 031A. Acceptance of the $6,105.00 payment would increase the overall contract price by that same amount.

**FCR 033:** This FCR was initiated by ICI and submitted to SSC on May 1, 2002 in the amount of $9,947.00. The FCR stated the data sheets from specification 110GM-GM02 were deficient because they did not implicitly state the specific gravity for the suction media of hydrogen peroxide when specifying eductors EDU-15A9014-H202 and EDU-15A9045-H202. This FCR



Fax:2288811141 Aug 30 2002 14:34 P.03

was disapproved on June 4, 2002 because ICI used the gravity weight of 1.0 when sizing the eductors, even though hydrogen peroxide has a specific gravity of 1.5. Accordingly, ICI should have ordered the appropriately sized eductors from its supplier. The contract's data sheets for eductors clearly stated the suction media is hydrogen peroxide. There is no ambiguity. Therefore, your request for additional compensation as it relates to FCR 033 is denied.

**FCR 035:** This FCR was initiated by ICI and submitted to SSC on May 17, 2002 in the amount of $5,252.00. The FCR was disapproved on June 4, 2002. The FCR stated ICI was directed to relocate a 6" and 4" underground deluge water line to avoid interference with concrete forms placed by another contractor. According to ICI, this relocation caused the 4" riser to be offset 4'-0" from its intended position. NASA did not direct or approve the relocation of a 6" or 4" underground deluge water line. There is no 6" underground deluge water line in the vicinity of this claim. The contract's drawing details where the riser should be located and no deviation from this was ever approved by NASA. There are no concrete forms visible that could impair the contractor's ability to locate 4" riser in accordance with contract drawing EMI 01NTA2 M4. Based on the above, your request for compensation pursuant to FCR 035 is denied.

**FCR 036:** This FCR was initiated by ICI and submitted to SSC on May 17, 2002 in the amount of $3,689.00. The FCR stated the isometric drawings show bosses and tubing coming off horizontal header in a position that will cause them to interfere with parallel hydraulic header. This work was accomplished prior to submittal of the FCR and without the approval of the Contracting Officer. The FCR was disapproved on June 4, 2002 and is considered a field verification issue in accordance with the following excerpts from construction specification 110GM-GM02 and contract drawing EMI 01NTA2 M1.

Specification section 01010 part 1.3 of specification 110GM-GM02:

> "Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

> Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."
>
> Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

Based on the fact that all dimensions require field verification by the contractor in accordance with the listed specification sections and drawings, meaning, any discrepancies had to be brought to the Contracting Officer before work is begun, and ICI's failure to provide such notification, your request for additional compensation is denied.

**FCR 037:** This FCR was initiated by ICI and submitted to SSC on May 17, 2002 in the amount of $3,797.00. The FCR stated the subject deluge water line would interfere with existing flame bucket structure if positioned as shown in contract drawings. The FCR

incorrectly states the subject line as 1-1/2" diameter; actual line size is 4" in diameter. Contractor completed the work of the FCR without the approval of the Contracting Officer. The FCR was disapproved on June 4, 2002 and is considered a field verification issue in accordance with the following excerpts from construction specification 110GM-GM02 and contract drawing EMI 01NTA2 M1.

Specification section 01010 part 1.3 of specification 110GM-GM02:

> "Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

> Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."
>
> Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

Based on the fact that all dimensions require field verification by the contractor in accordance with the listed specification sections and drawings, meaning, any discrepancies had to be brought to the Contracting Officer before work is begun, and ICI's failure to provide such notification, your request for additional compensation is denied.

**FCR 038:** This FCR was initiated by ICI and submitted to SSC on May 17, 2002 in the amount of $3,435.00. The FCR stated the pipe riser was set at 3'2" off concrete as shown on drawing M4. The aboveground piping was detailed and fabricated according to M16. Drawing M11 shows riser at 1'7" off concrete. The contractor field modified the piping to connect at the 3'2" location by cutting 90 degrees off spool and adding 1'7" of pipe. The FCR was disapproved on June 4, 2002 and is considered a field verification issue in accordance with the following excerpts from construction specification 110GM-GM02 and contract drawing EMI 01NTA2 M1.

Specification section 01010 part 1.3 of specification 110GM-GM02:

> "Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

> Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."
>
> Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

Based on the fact that all dimensions require field verification by the contractor in accordance with the listed specification sections and drawings, meaning, any discrepancies had to be

brought to the Contracting Officer before work is begun, and ICI's failure to provide such notification, your request for additional compensation is denied.

**FCR 040:** This FCR was initiated by ICI and submitted to SSC on May 17, 2002 in the amount of $2,801.00. The FCR stated the contract drawings incorrectly showed top of steel elevation for pipe supports PS-31 and PS-32 at 37.00' when it should be 37.75'. ICI initiated and completed this additional work without the prior approval of the Contracting Officer. After its review, NASA has concluded that ICI should be compensated for this unauthorized work because NASA received a benefit, the work needed to be done, and would have been accomplished, and funds were available at the time of the unauthorized work. NASA however, disagrees with ICI's proposed cost. ICI's labor costs are listed as overtime rates, but ICI was not working overtime at the time the work was accomplished, as confirmed by a review of ICI's payroll records. Under equipment expenses, ICI has requested additional compensation for a boom truck and welding machines that were already onsite and covered under the original contract costs. Using ICI's adder rate identified in the FCR, NASA is willing to approve a cost of $1,734.80 for the unauthorized work accomplished under FCR 040. Acceptance of the $1,734.80 payment would increase the overall contract price by that same amount.

**FCR 042:** This FCR was initiated by ICI and submitted to SSC on May 17, 2002 in the amount of $3,366.00. The FCR stated pipe support PS-49 on drawing M31 shows support base to centerline of pipe at 11'-0". The measurement should have been 16'-0". ICI took it upon itself to accomplish this additional work without the prior approval of the Contracting Officer. Had NASA been properly notified by ICI, the requirement for installing the pipe support would have been deleted from the contract. The work that was completed by ICI was without NASA direction, was not needed by the government, and was not necessary for system operation, therefore your request for additional compensation as it pertains to FCR 042 is denied.

If you decide to accept our decision to compensate ICI for FCR 031A and/or FCR 040, please let us know no later than September 13, 2002 and a supplemental modification will be issued for your signature.

This is the final decision of the Contracting Officer. You may appeal these decisions to the Armed Services Board of Contract Appeals. The Board's operating procedures appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals at the following address: (Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208), and also provide a copy to the Contracting Officer. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

James D. H[illegible] II
Contracting Officer

Certified mail, return receipt requested

cc:
CA00/ K. Human
RA71/ J. Barnett



EXHIBIT A
PAGE 6 OF 6

Aug 30 2002 14:36 P.02 Fax:2286881141

National Aeronautics and
Space Administration
**John C. Stennis Space Center**
Stennis Space Center, MS 39529-6000

September 6, 2002

Reply to Attn of: DA10

RECEIVED
SEP 1 1 2002
INDUSTRIAL CONSTRUCTION INC.

Mr. Jon L. Johnson
Industrial Construction Inc.
P.O. Box 51920
Idaho Falls, ID 83405-1920

Subject: Contract NAS13 02034, Contracting Officer's Final Decision regarding Industrial Construction Inc., Claim 2022-1-F39, dated July 9, 2002

Dear Mr. Johnson:

The above referenced claim was received in our office on July 9, 2002. This claim requested compensation in the amount of $20,154.00 as it related to Field Change Requests (FCRs) 072, 074, 075, 076, 077 and 079. ICI asserted that the work associated with the referenced FCRs constitute "changes pursuant to FAR 52.243-4" and are compensable.

Pursuant to FAR 33.211, the Contracting Officer's Final Decision is as follows:

The "Changes Clause" provides the Contracting Officer the authority to make changes within the general scope of the contract being administered. Once a change is identified by the Government, the contractor is notified of that change, and is provided the authorization to perform the work. The contractor then has an opportunity to seek an adjustment to the contract price, delivery or completion schedule. It does not authorize contractors to unilaterally perform work or effectuate changes to the contract without the prior express approval of the Contracting Officer.

**FCR 072:** This FCR was submitted to Stennis Space Center (SSC) on July 2, 2002 in the amount of $3,950.00 for work performed in lengthening an offset in line 2" NCK1-DI from 4'-9 7/8" on drawing 01NTA2 M23. ICI stated that the actual dimension will be 5'-7" and the dimension was not flagged for field verification. The FCR was disapproved on July 9, 2002, based on your failure to perform a field verification (as no documentation has been presented) and your failure to properly notify the Contracting Officer before completing the work. The contract specifically states that all dimensions do require field verification in accordance with the specification sections and drawings listed below:

Specification section 01010 part 1.3 of specification 110GM-GM02:

"Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."

Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

Since your claim under this FCR is based on the same information presented on July 2, 2002, with no additional or new information, your request for additional compensation is denied.

**FCR 074:** This FCR was submitted to SSC on July 3, 2002 in the amount of $4,547.00 for work performed in modifying 4" NCK1-PW line because of a dimensional error on drawing 01NTA2 M17. ICI's Request For Information (RFI) 069 indicated that this dimensional error caused the line to impact an existing pipe support because of the fitting lengths of the 4" elbow, 4x6 reducer, and 6" tee. The FCR was disapproved on July 9, 2002. ICI's position is incorrect. The fittings in question are downstream of the subject pipe and cannot cause the pipe to impact the support. The hard point in the system is upstream of the 6" tee, so the reducer and elbow will not affect the location of the pipe coming out of the tee. Additionally, the existing pipe support is not located as indicated on the drawing used by ICI for installation. ICI's actions derive from its failure to "field verify" and notify the Contracting Officer of any discrepancies before it fabricated the offset to the pipe. Your stated understanding that "ICI should consider the dimensions on the drawings as dependable and that field verification is only required where identified by a flag note or +/- designator" (see FCR 074) is erroneous as the contract clearly states that all dimensions do require field verification in accordance with the specification sections and drawings listed below.

Specification section 01010 part 1.3 of specification 110GM-GM02:

"Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."

Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

Based on the foregoing, your request for additional compensation is denied.

**FCR 075:** This FCR was submitted to SSC on July 3, 2002 in the amount of $2,532.00 for work directed by the Government, pursuant to NASA letter RA 70/02-05686JCB, to modify the 2" NCK1-DI water line by removing one weld on 90 degree elbow and cutting a second one loose and rewelding. However, that letter provided approval only if there is "no cost to the government". ICI performed the work without notifying the Government that costs would be incurred and now ICI seeks compensation for work that was not to be charged to the Government. The FCR was disapproved on July 9, 2002 for failing to field verify dimension accuracies and failing to notify the Contracting Officer before work was performed. Your request for additional compensation is denied because you violated the Government's conditional approval, by charging the Government, even though NASA's response clearly stated, "NASA concurs with the change at no cost to the government."

Alternatively, your submitted Request For Information (RFI) 067 did not state that the subject piping would not work as designed, only that the elbows detailed in the design were not necessary. If there was a problem with the existing design, ICI then that should have identified that problem in the RFI 067 or in FCR 075 to afford NASA the opportunity to resolve any issues before work was performed. Once again, any interference that may or may not have been caused by the existing design would have been a field verification issue covered in the specification sections and drawings listed below.

Specification section 01010 part 1.3 of specification 110GM-GM02:

> "Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

> Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."
>
> Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

**FCR 076:** This FCR was submitted to SSC on July 8, 2002 in the amount of $3,430.00 for fabrication changes to the 2" NCK1-H202 piping because the dimensions shown on drawing 01NTA2 M22 was inaccurate. The stated 4" 9 7/8" was 1 7/8" short. ICI also stated that the dimension was not subject to field verification because it did not have a +/- indicator or had not been flagged by NASA. That FCR was disapproved on July 9, 2002 because of ICI's contract requirement to field verify all dimensions as stated:.

Specification section 01010 part 1.3 of specification 110GM-GM02:

> "Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

> Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."
>
> Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

Your request for additional compensation is denied based on the contractual requirements for field verification and your failure to follow proper procedures, namely to notify and obtain the Contracting Officer's approval prior to the performance of any work identified in a FCR.

**FCR 077:** This FCR was submitted to SSC on July 8, 2002 in the amount of $1,070.00 for additional digging work performed by ICI while attempting to locate an underground 6" PVC pipe tie in for 4" PVC-DW. The FCR was disapproved on July 9, 2002 because ICI's additional digging was not directed by or approved by the Contracting Officer before ICI performed the work. ICI dug past the intersection point to the wrong pipe. As flag note 1 on contract drawing 01NTA2 M4 states: "Demolish existing underground 4" pipe to approximately this location; field route new pipe to above ground connection indicated on Section D." No hard location was given for the subject underground pipe.

Your request for additional compensation is denied based on the contractual requirements for field verification and your failure to follow proper procedures, namely to notify and obtain the Contracting Officer's approval prior to the performance of any work identified in a FCR.

**FCR 079:** This FCR was submitted to SSC on July 8, 2002 in the amount of $4,625.00 for additional pipe fabrication costs. ICI stated that the discharge for DI Water Pumps P-15A6084-DI and P-15A6074-DI are higher than shown on contract drawings and that the dimensional data was not available prior to pipe fabrication. That FCR was disapproved on July 9, 2002 because ICI purchased the pumps before confirming field conditions. The contract specifically stated in General Note 11, contract drawing 01NTA2 M1: "Pump connections shown are estimated. Actual connection to pumps may require a change in elevation or line size." Changes in piping due to pump connections were therefore ICI's responsibility. ICI has not provided new or additional information from that contained in FCR 079, and based on the foregoing reasons, your request for additional compensation is denied.

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals. The Board's operating procedures appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals at the following address: (Skyline

Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208), and also provide a copy to the Contracting Officer. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

James D. Huk II
Contracting Officer

Certified, Return Receipt Requested

cc:
CA00/ K. Human
RA71/ J.Barnett

National Aeronautics and
Space Administration

**John C. Stennis Space Center**
Stennis Space Center, MS 39529-6000

September 6, 2002

Reply to Attn of: DA10

RECEIVED
SEP 1 1 2002
INDUSTRIAL CONSTRUCTION INC.

Mr. Jon L. Johnson
Industrial Construction Inc.
P.O. Box 51920
Idaho Falls, ID 83405-1920

Subject: Contract NAS13 02034, Contracting Officer's Final Decision regarding Industrial Construction Inc. Claim 2022-1-F45.dated July 19, 2002

Dear Mr. Johnson:

The above referenced claim was received in our office on July 19, 2002. This claim requested compensation in the amount of $13,667.00 as it related to Field Change Requests (FCRs) 083, 084 and 085. ICI asserted that the work associated with the referenced FCRs constitute "changes pursuant to FAR 52.243-4" and are compensable.

Pursuant to FAR 33.211, the Contracting Officer's Final Decision is as follows:

The "Changes Clause" provides the Contracting Officer the authority to make changes within the general scope of the contract being administered. Once a change is identified by the Government, the contractor is notified of that change, and is provided the authorization to perform the work. The contractor then has an opportunity to seek an adjustment to the contract price, delivery or completion schedule. It does not authorize contractors to unilaterally perform work or effectuate changes to the contract without the prior express approval of the Contracting Officer.

**FCR 083:** This FCR was submitted to SSC on July 17, 2002 in the amount of $3,886.00 for work performed in relocating one valve because the spacing shown on pipe support PS-23 did not allow room to install hydraulic valves side by side as shown on the contract drawings. The FCR was disapproved on July 17, 2002 because ICI purchased the hydraulic valves before field verifying the dimensions and for failing to follow proper procedures in seeking and obtaining the Contracting Officer's approval prior to performing any work. The contract clearly states at specification 110GM-GM02 and contract drawing EMI 01NTA2 M1:

Specification section 01010 part 1.3 of specification 110GM-GM02:

"Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."

Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

ICI has not provided new or additional information supporting its request for payment, and based on the foregoing reasons, your request for additional compensation is denied.

**FCR 084:** This FCR was submitted to SSC on July 17, 2002 in the amount of $4,370.00 for work performed in extending the 3" NCK1-H2O2 line shown on contract drawing EMI 01NTA2 M22, which included 2 additional welds. ICI stated the drawings were in error over the line's dimensions. That FCR was disapproved on July 17, 2002 because ICI did not field verify, and ICI failed to follow proper procedures in seeking and obtaining the Contracting Officer's approval before performing the work. The contract clearly indicated ICI's responsibilities at specification 110GM-GM02 and contract drawing EMI 01NTA2 M1:

Specification section 01010 part 1.3 of specification 110GM-GM02:

"Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."

Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

ICI has not provided new or additional information supporting its request for payment, and based on the foregoing reasons, your request for additional compensation is denied.

**FCR 085:** This FCR was submitted to SSC on July 17, 2002 in the amount of $5,411.00 for work performed on the 6" and 4" lines feeding eductor EDU-15A9014 to allow the eductor and MV-15A9049 to fit. Both the subject valve and eductor were purchased by ICI, therefore the dimensions for fitting these components were ICI's responsibility.. The FCR was disapproved on July 17, 2002 because ICI did not field verify, and ICI failed to follow proper

procedures in seeking and obtaining the Contracting Officer's approval before performing the work. The contract clearly states at specification 110GM-GM02 and contract drawing EMI 01NTA2 M1:

Specification section 01010 part 1.3 of specification 110GM-GM02:

> "Dimensions on drawings shall be checked for accuracy by the Contractor. The Contractor shall determine exact dimensions for proper fit. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

> Note 1: "All dimensions and conditions shall be verified in the field and any discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work."
>
> Note 2: "All pipe and tube routing shown on the accompanying drawings is approximate and must be field verified prior to the start of fabrication or erection."

ICI has not provided new or additional information supporting its request for payment, and based on the foregoing reasons, your request for additional compensation is denied.

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals. The Board's operating procedures appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals at the following address: (Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208), and also provide a copy to the Contracting Officer The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

James D. Hak II
Contracting Officer

Certified Mail, Return Receipt Requested

cc:
CA00/ K. Human
RA71/ J.Barnett

National Aeronautics and
Space Administration
**John C. Stennis Space Center**
Stennis Space Center, MS 39529-6000

September 6, 2002

Reply to Attn of: DA10

RECEIVED
SEP 11 2002
INDUSTRIAL CONSTRUCTION INC.

Mr. Jon L. Johnson
Industrial Construction Inc.
P.O. Box 51920
Idaho Falls, ID 83405-1920

Subject: Contract NAS13 02034, Contracting Officer's Final Decision regarding Industrial Construction Inc. Claim 2022-1-F48 dated July 23, 2002

Dear Mr. Johnson:

The above referenced claim was received in our office on July 23, 2002. This claim requested compensation in the amount of $15,027.00 as it related to Field Change Requests (FCRs) 001, 005 and 071. ICI asserted that the work associated with the referenced FCRs constitute "changes pursuant to FAR 52.243-4" and are compensable.

Pursuant to FAR 33.211, the Contracting Officer's Final Decision is as follows:

The "Changes Clause" provides the Contracting Officer the authority to make changes within the general scope of the contract being administered. Once a change is identified by the Government, the contractor is notified of that change, and is provided the authorization to perform the work. The contractor then has an opportunity to seek an adjustment to the contract price, delivery or completion schedule. It does not authorize contractors to unilaterally perform work or effectuate changes to the contract without the prior express approval of the Contracting Officer.

**FCR 001:** This FCR was issued by Stennis Space Center (SSC) on March 26, 2002 to notify ICI of a change to Section 15050, paragraph 2.2.10, first part A and B: "Lubricants utilized in hydrogen peroxide service shall be restricted to (1) Halocarbon 25-5S and (2) Dow Corning 111. ICI responded with a proposed cost of $4,102.00 for controlling the use of these lubricants at several facilities that typically use LOX compatible lubricants and not for an actual material cost increase. SSC and ICI held several meetings to discuss this FCR. On June 28, 2002, SSC disapproved the request. Further review indicated that the original specifications limited the lubricants acceptable for use in the hydrogen peroxide service.



EXHIBIT D
PAGE 1 OF 3

Because of this limitation, quality control was already necessary to ensure the lubricants were not mishandled or misapplied. ICI has not provided substantiation for further quality control costs that are above the costs already associated with the contract. Quality control was needed prior to and after the FCR's substitution; there is no net gain or loss in the amount of quality control necessary for contract performance.

Based on the foregoing reasons, your request for additional compensation is denied.

**FCR 005:** This FCR was submitted to SSC on April 2, 2002 in the amount of $8,869.00 because ICI could not proceed with the installation of the 12" DN/DWD line for two reasons (1) the deluge water system cannot be isolated for an extended period, and (2) no provision for an isolated valve at the tie point tee, thus ICI had to expedite spool delivery to install its own 12" valve. That FCR was disapproved on June 28, 2002 because ICI's concerns were resolved with the approval of FCR 02034-004 on 9 April 2002. FCR 02034-004 relocated the E3 isolation valve (MV-15E6012-DW) to the tie-in point referenced above. ICI completed that work at no cost and with no impact to schedule.

ICI has not provided new or additional information supporting its request for payment, therefore, based on the foregoing reasons, your request for additional compensation is denied.

**FCR 071:** This FCR was submitted to SSC on July 1, 2002 in the amount of $2,056.00 for work performed in making a change in line #1 ALM1-H202. ICI stated that the drawing 01NTA2 M20 indicated an offset of 2' 3 9/16," but an offset of 3' ¾" was needed and that the dimension did not require field verification. That FCR was disapproved on July 3, 2002 because ICI did not field verify, and ICI failed to follow proper procedures in seeking and obtaining the Contracting Officer's approval before performing the work. The contract clearly indicated ICI's responsibilities and the need for field verification at specification 110GM-GM02 and contract drawing EMI 01NTA2 M1.

Specification section 01010 part 1.3 of specification 110GM-GM02:

> "Dimensions on drawings shall be checked for accuracy by the Contractor. The <u>Contractor shall determine exact dimensions for proper fit</u>. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

> Note 1: "All dimensions and conditions shall be verified in the field and any <u>discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work</u>."
>
> Note 2: "All pipe and tube routing shown on the accompanying drawings is <u>approximate and must be field verified prior to the start of fabrication or erection</u>."

ICI has not provided new or additional information supporting its request for payment, therefore, based on the foregoing reasons, your request for additional compensation is denied.

This is the final decision of the Contracting Officer. You may appeal this decision to the Armed Services Board of Contract Appeals. The Board's operating procedures appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals at the following address: (Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208), and also provide a copy to the Contracting Officer. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

James D. Huk II
Contracting Officer

Certified Mail, Return Receipt Requested

cc:
CA00/ K. Human
RA71/ J.Barnett

National Aeronautics and
Space Administration
John C. Stennis Space Center
Stennis Space Center, MS 39529-6000

Dec 2, 2002

Reply to Attn of: BA31

Industrial Construction Inc.
P.O. Box 51920
Idaho Falls, ID 83405-1920

Subject: Contract NAS13 02034, Contracting Officer's Final Decision regarding Industrial Construction Inc. Claim 2022-1-21 dated October 3, 2002

The above referenced claim was received in our office on October 3, 2002. This claim requested compensation in the amount of $9,896.00 as it related to Field Change Requests (FCRs) 066 and 091. Listed below is a synopsis of each FCR and the contracting officer's decision as it pertains to each FCR:

**FCR 066:** This FCR was initiated by ICI and submitted to SSC on June 19, 2002 in the amount of $6,139.00. The FCR stated the NASA response to Request for Information (RFI) #064 described modifications of the piping system at the vessel V230. The FCR also stated the modifications would require (2) 4" weld cutouts, (2) 4" welds, (2) x-rays and modifications to (2) supports. The FCR was disapproved on June 21, 02 and is considered a field verification issue in accordance with the following excerpts from construction specification 110GM-GM02 and contract drawing EMI 01NTA2 M1. Based on the fact that all dimensions require field verification by the contractor in accordance with the specification sections and drawings listed below, your request for additional compensation is denied.

Specification section 01010 part 1.3 of specification 110GM-GM02:

> "Dimensions on drawings shall be checked for accuracy by the Contractor. The <u>Contractor shall determine exact dimensions for proper fit</u>. Drawings shall not be construed as being detailed working drawings."

Contract drawing EMI 01NTA2 M1 notes 1 and 2:

> Note 1: "All dimensions and conditions shall be verified in the field and any <u>discrepancies shall be brought to the attention of the Contracting Officer before proceeding with the affected portion of work</u>."
>
> Note 2: "All pipe and tube routing shown on the accompanying drawings is <u>approximate and must be field verified prior to the start of fabrication or erection</u>."

RECEIVED
DEC - 2 2002
INDUSTRIAL CONSTRUCTION INC.

EXHIBIT E
PAGE 1 OF 3

**FCR 091:** This FCR was initiated by ICI on August 6, 2002 in the amount of $3,757.00. The FCR stated the Government Furnished Vessel V500 was equipped with a 2 ½" flange where drawing M14 shows a 2" NCK1-H202 connection. The line would have to be modified by adding a reducer. NASA agreed with ICI's observation, however NASA decided that the additional work would be accomplished by others. On Aug 16, 2002, NASA issued a letter to ICI stating that ICI's request to accomplish the additional work was disapproved and that the additional work would be accomplished by others. Without any direction from a Contracting Officer, ICI completed the additional work described in the FCR.

On numerous occasions through the life of this acquisition, both the contract administrator and the contracting officer have explained to Mr. Johnson that ICI's mere submittal of an FCR does not "authorize" additional work. Only a contracting officer can authorize additional work.

After reviewing ICI's claim for additional compensation, NASA has concluded that ICI should be compensated for this unauthorized work due to the fact that (1) NASA received a benefit, (2) NASA had a requirement for the work and (3) funds were available at the time of the unauthorized work. NASA however, disagrees with ICI's proposed cost associated with the unauthorized work. ICI's proposed labor costs, equipment costs and miscellaneous costs are excessive. As stated in the paragraph above, the scope of the unauthorized work included (2) additional welds on 2 ½" SCH 10 pipe. The Government estimate comes to a total of (20) pipe fitter hours. Under equipment costs, ICI has requested additional costs for a welding machine and tri tool. The subject equipment was on site during the entire time of construction and no additional costs are warranted. Under miscellaneous costs, ICI requests additional compensation for the X-ray of ten welds. Per contract specification 1100GM-GM02 only 10% of welds for this class pipe are subject to X-ray, therefore only (1) weld is required to be X-rayed. Using the contractor's adder rate identified in the FCR, NASA would approve a cost of $1,736.79 for the unauthorized work accomplished under FCR 091. If you decide to accept this compensation as full payment for FCR 091, please let us know as soon as possible and a supplemental modification will be issued for your signature.

The above decisions are the final decisions of the Contracting Officer. You may appeal these decisions to the Armed Services Board of Contract Appeals. The Board's operating procedures appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals at the following address: (Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208), and also provide a copy to the Contracting Officer. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or

less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision. If you have any questions, please contact me at (228) 688-2346.

Jason Edge
Contracting Officer

Certified Mail, Return Receipt Requested

cc:
CA00/ K. Human
RA71/ J.Barnett

National Aeronautics and
Space Administration

John C. Stennis Space Center
Stennis Space Center, MS 39529-6000

Dec 20, 2002

Reply to Attn of: BA31

Industrial Construction Inc.
P.O. Box 51920
Idaho Falls, ID 83405-1920

Subject: Contract NAS13 02034, Contracting Officer's Final Decision regarding Industrial Construction Inc. Claim 2022-1-23 dated October 22, 2002

The above referenced claim was received in our office on October 23, 2002. This claim requested compensation in the amount of $257,308.00 as it related to Field Change Requests (FCRs) 064 and 065.

The claim states, "The work associated with the enclosed FCR's constituted changes pursuant to FAR 52.243-4." However, this is a misstatement because neither of these two FCR's were for additional work. FCR 064 was a request for a (57) day extension and FCR 065 was a request for additional compensation as a result of ICI labor inefficiencies. Both of these FCR's were submitted by ICI, not NASA. FAR 52.243-4 provides the Contracting Officer the authority to make changes within the general scope of the contract being administered. Once the government identifies a needed change, the contractor is notified of that change, and is provided the authorization to perform the work. The contractor then has an opportunity to seek an adjustment to the contract price, delivery or completion schedule. It does not authorize contractors to unilaterally perform work or effect changes to the contract. Listed below is a brief history of the modifications issued, a synopsis of events pertaining to the contract and each FCR, and the Contracting Officer's Final Decision as it pertains to each FCR:

This contract had a total of (93) FCRs. There were also (10) modifications to this contract, (8) supplemental agreements and (2) unilateral change orders. An overwhelming majority of the FCRs that were submitted by ICI contained requests for overtime hours and NASA agreed to pay overtime dollars for the additional work. The ten (10) modifications provided a total of (803) overtime hours and an additional (124) straight time hours for a total of (959) additional hours. After reviewing all of ICI's payrolls, it was noted that ICI worked a total of (856.5) overtime hours.

RECEIVED
DEC 23 2002
INDUSTRIAL CONSTRUCTION INC.

**FCR 064:** This FCR was initiated by ICI and submitted to SSC on June 19, 2002. The FCR requested $122,461.00 for a (30) day extension to the Phase 1 completion date of July 18, 2002. NASA evaluated this request and denied it because there was no justification for the extension. Instead, on July 1, 2002, NASA offered to extend the phase I completion date (5) calendar days at no additional cost. There would be no additional costs (i.e. extended overhead), associated with the extension, because the contract completion date of Sep 17, 2002 was not going to change. On July 12, 2002 ICI rejected our offer for the (5) day extension to Phase I. On Aug 23, 2002, ICI requested a (4) day no cost extension due to adverse weather conditions and NASA agreed to extend the contract completion date from Sep17, 2002 to Sep 21, 2002 via Modification #9. On Sep 4, 2002 ICI submitted a Revision to FCR 064 and increased their request for additional days from (30) to (57) at an increased cost of $195,224.00. This request was evaluated and on Sep 5, 2002, was disapproved.

Your claim for additional compensation as it relates to this FCR has been found to be unjustified and therefore is denied based on the following reasons: ICI requested overtime hours and NASA agreed to pay both premium overtime wages and additional straight time for all changes to this contract. Payment of overtime hours and wages implies that the work would be accomplished during overtime, thus negating the need for additional days. Also, a review of ICI's payroll records confirmed that ICI's employees worked overtime hours that ultimately resulted in ICI completing the work early. Therefore, your claim for additional compensation is denied.

**FCR 065:** On April 29, 2002 ICI submitted letter 2022-1-F7 requesting $47,970.00 for lost labor as a result of delays to their work caused by others. This letter stated the untimely completion of the new concrete slabs delayed and impacted the underground water pipe and pipe supports piers and disrupted their planned sequence of work. NASA responded with a letter on May 10, 2002 documenting the poor workmanship of the ICI subcontractor Continental Steel, which resulted in rework and delays due to poor workmanship.

ICI had to rework/rebuild three major pipe supports as they were installed in the wrong place with the wrong installation method by Continental Steel. This delayed installation of deluge at the catch tank area. ICI had to rework the storage vessel installations due to missed anchors and imbed plates as well as several man days of concrete spill cleanup, of which was created by Continental Steel. This area delayed the installation of deluge and catch system.

Then on June 19, 2002, ICI initiated FCR 065 in the amount of $62,084.00 for labor inefficiencies through April 26, 2002. The FCR requested additional compensation for 1) lost labor as a result of pending FCR's and 2) delays caused by other contractors. The FCR was disapproved on Aug 1, 2002. As of April 25, 2002, NASA issued two supplemental modifications approving a total of (157) overtime hours as they related to FCR's 2-4, 6-10, 12, 13, 16, 17, 19, 26 and 27. Based on your work schedule, daily reports and our progress photos the underground deluge line and pipe supports piers were completed ahead of schedule. Per our letter dated May 10, 2002, had your subcontractor properly installed all the piers initially, you would have finished even further ahead of schedule. Your claim for additional compensation as it relates to this FCR has been found to be unjustified and therefore is denied.

The above decisions are the final decisions of the Contracting Officer. You may appeal these decisions to the Armed Services Board of Contract Appeals. The Board's operating procedures appear in Part 48, Code of Federal Regulations, Chapter 2, Appendix A. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the Armed Services Board of Contract Appeals at the following address: (Skyline Six, 5109 Leesburg Pike, Falls Church, VA 22041-3208), and also provide a copy to the Contracting Officer. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C.603, regarding Maritime Contracts) within 12 months of the date you receive this decision. If you have any questions, please contact me at (228) 688-2346.

Jason Edge
Contracting Officer

Certified Mail, Return Receipt Requested

cc:
CA00/ K. Human
RA71/ J.Barnett